Good morning, and may it please the court, Ayesha Khan on behalf of the plaintiffs. I'd like to start by giving you an update on the proceedings below. As you know, this has been a fast-moving case. It is fairly procedurally complex, and there has been development since the preliminary injunction order was issued, some of which you know about and some of which you don't. As you do know, there has been a ruling on the defendant's motion for summary judgment, and the court there held that two incidents that we have challenged did violate the Establishment Clause, and that the plaintiff's claim under two prongs of the Lemon Test, namely effect and entanglement, as well as the plaintiff's endorsement challenge and coercion claim, fail, but that the religious purpose challenge remains alive. Since that ruling... The religious purpose ruling as to the Lemon case? Yes, the religious purpose prong of the Lemon Test. You mean no secular purpose prong one? Prong one. Prong one, or is prong two that the effect is predominantly secular? Which one do you mean? Prong one. All right. Prong one is what remains alive in the case. The court held that the plaintiff had withstood summary judgment on that claim. Since that holding... That's the secular purpose. Secular purpose, yes. Prong. Your Honor, yes. All right. And that was a tribal issue of fact as to whether there was not an exclusively secular purpose or predominantly secular purpose. That's right. The plaintiffs prevail if they show that the defendant's action was taken with a primarily religious purpose. So since that time, we have moved for summary judgment on... The endorsement test? Where are we on that? The endorsement test the court held that we do not prevail on. Okay. Likewise, effect, the effect, the second prong of lemon, and the third prong of lemon, which is entanglement. And the coercion test? The same, Your Honor. The court held that we do not prevail on that aspect of our claim. All right. So... On the remaining... I don't want to interrupt. No, no. I'm sort of bemused by what you're telling me. I don't think to say it's inaccurate, but you're saying that the district court found that on the endorsement test, the invocation and the statements, let us pray, did not constitute an endorsement of religion? That's right. But that it could constitute an instance of an absence of secular purpose, failing to show that there was a predominantly or primarily secular purpose. That's right. The court held that there was substantial evidence in the record to reflect a religious purpose. And so the court was not prepared to rule against the plaintiff on that claim. We have, since that ruling, moved for summary judgment on that remaining religious purpose claim. The defendant had earlier moved for summary judgment on the entire case. The ruling led to the court saying the religious purpose claim remains alive, and we have now moved for summary judgment on that remaining religious purpose claim. We have also narrowed our request for injunctive release in that summary judgment filing. So we are now seeking an injunction against the continued presentation of prayers. Period. Period. Not religiously themed programming. That's right, Your Honor. The religiously themed programming request, the request to encompass that within our injunction, was driven by some presentations that the district court found violated the Constitution. Namely, the presentation of a God Bless the USA video that is described fully in our brief, as well as a presentation at a scholarship ceremony in 2008 that the district judge also found to have violated the Constitution. And the defendants took the position below that those were not prayers. And so we thought it advisable to ask for two different kinds of behavior to be enjoined. This all went on while the case is up on appeal? Yes, Your Honor. We sought to stay the proceedings below, but the district judge denied that motion. And so the case has proceeded. But the case is up here. How does the district judge have jurisdiction over any part of it? Well, because there is discretion when what is on appeal is a preliminary injunction. There is discretion on the part of the district judge to continue with the case despite the appeal. And if the district court were to conclusively finally dispose of the case in full, that would have the effect of moving the preliminary injunction appeal. Here, of course, that hasn't happened. As I described, the religious purpose claim does remain alive. So before this court, the preliminary injunction we are seeking is no longer the broad injunction that we sought below. It is the narrow injunction that we are now seeking. Let me clarify that in one respect. You made this, I don't want to call it a concession, or maybe I should. Is that a permanent concession, or is that simply responding to the landscape you're facing in the district court with the intent to renew on appeal after the district court enters a final judgment a request for a broader injunction? No, Your Honor. It is. So we're now down just to the prayer. You're down to the prayer. That's right. Was that a proposition put to the district court at the time it denied the preliminary injunction? No, Your Honor. And that is because the court had yet to issue the summary judgment ruling where the court opted to find those two particular incidents to be a violation of the law. So we, at that point, still had what we thought was a viable claim for a broader injunction. But we do believe, because of developments on the ground, that we can limit and should and do limit our injunctive request to the prayers of law. Ms. Kahn, let me ask you, you said two incidents violated the establishment clause. What besides the prayer of, was it? Trustee Wagner. Yeah, Mr. Wagner. What was the other incident? It was a video called God Bless the USA. That was a series of slides that concluded with a caption and a photograph to go along with it that was something to the effect of only two people have died for your soul, Jesus Christ and the American GI. Okay. And the district court said that that was a violation of the establishment clause. Well, I'm thinking now, it seemed to me that one of the engines that drove the district court's decision in denying the primary injunction was concern for what the court perceived as being the overbreadth of the requested injunction. And now the overbreadth problem may have been addressed or resolved by the narrowing of your request. Is this something we should be sending back to district court so it can address the narrower injunction request? Your Honor, that would certainly make good sense. There have been these developments. We have narrowed it. We think what we did is ask for a preliminary injunction against two kinds of behavior. And for ease, I'll call them A and B. And the district court concluded that because B was overbroad, we somehow got no preliminary injunction with respect to A. I also want to offer another reason. And it's Alliance for the Wild Rockies, which I assume the court is familiar with. It's the September 2010 ruling by this court where the court held that the serious question standard survived winter. The Supreme Court decision in winter. There was a lot of ambiguity about that. There were two Ninth Circuit decisions that suggested it did not survive. But the court ruled that it did. And so the district court didn't have the benefit of the proper standard that should govern whether a preliminary injunction ought to issue here. And frankly, neither did this court, at least with respect to our opening brief, because Alliance for the Wild Rockies was decided even after our opening brief before you was filed. Walk me through how that would affect. Alliance for the Wild Rockies held that the plaintiffs are entitled to a preliminary injunction if they demonstrate serious questions going to the merits of the claim. If the balance of hardships tips sharply in the plaintiff's favor. So that means that the plaintiffs need not demonstrate a likelihood of prevailing, but only that serious questions are raised. We think that the court's November 4th order, which relates to the summary judgment on the defendant's motion, makes it quite plain that we raise serious questions on religious purpose. Now, was Alliance for the Wild Rockies, in effect, a Supreme Court case changing winter? Alliance for the Wild Rockies was a Ninth Circuit decision holding that the serious question standard survives winter. Was it limited to the preservation of the status quo context? No, this court certainly didn't say so, that it was limited to only a non-mandatory injunction and wouldn't have relevance in the context of a mandatory injunction. And I'm unfamiliar with this circuit having addressed whether it's limited or not limited. I confess I lose track sometimes of which of our discussions are kicking around internally and which of our discussions are actually opinions. My impression, well, so we'll go back and read it and make sure we know which is which. Well, I do think that there is some wisdom to the district court having an opportunity to struggle with some of these issues before this court does in light of these changes. But I would ask that if the decision is remanded, that the court ask the district court to expeditiously rule because there is a chancellor's opening session in January 2011, early January 2011, where another prayer will be presented. And so we would ask, with all due respect, either this court or the district court to issue a ruling in time for that event. Is there anything that precludes you from going back to the district court and requesting a narrowed preliminary injunction no matter what we do? I mean, assuming we haven't ruled yet. If we've spoken, then the district court has to pay attention to what we say. But in the meantime, does anything preclude the district court from entertaining a motion for preliminary injunction on the terms you're now articulating? No, Your Honor, there would not be. But this district court has a procedure whereby one cannot ask for a motion. There has to be at least 28 days lag time. So our hearing, for example, on the summary judgment motion is December 27th. So the court does have before it a complete record. There has been additional evidence submitted by the plaintiff at the summary judgment stage. And we certainly could ask the court to issue a preliminary injunction using the proper standard now that there has been an intervening decision. But the court is aware in our summary judgment motion that we have narrowed our injunctive. If we win at the summary judgment level, then this appeal becomes moot. If we win at the summary judgment level, this appeal would become moot. Yes, Your Honor. But there is, of course, no temporal obligation on the part of the district court to rule quickly on that summary judgment motion. I presume the district court, if it hasn't been made aware already, will be made forcefully aware that there's a ceremony scheduled in January. So the district court is probably in a better position than we are to evaluate what his timing would be in resolving the claim. But I take it you're going to bring that to his attention. That's right, and we have informed him. But I do want to – You really don't need us, do you? Well, we do need you because – Why do you need me? We need you because the district court has definitively declined to issue a preliminary injunction. And we think that was an error, that the judge was harboring the misimpression that simply because we asked for, as I said earlier, two kinds of behavior to be enjoined, the court somehow doesn't have to, as a matter of law, evaluate that request, apply the four factors, employ what's commonly understood to be part of equity jurisprudence, which is to narrow the relief to address the harm. And the court – we see it again in the summary judgment order, that the district judge appears to be under the impression that if a plaintiff asks for a million dollars in damages and you're only entitled to $200,000, you definitely – I don't think it's the same at all, frankly. If I'm – my district judge entertaining a motion for injunctive relief, particularly given the difficulty of crafting an order and enforcing it later, I look to the party who's requesting the injunctive relief to give me some guidance with regard to what it should say. And if what you offer up is something I think, as Judge Faustner appeared to think in this case, is overbroad and itself unconstitutional, I draw back from entering that order. Now, district court may be empowered to fashion something himself, but I don't know that at a preliminary injunction stage, at least, it's compelled. I don't think the analogy to a million dollars and $200,000 in damages is at all similar. Well, Your Honor, we sought an injunction against two different kinds of behavior. And so if you look at the Gerson case, for example – And he's looking – in fact, I'm reminded looking at this, he's basically said, well, I don't think injunctive relief is really going to be in order here because the part that troubles him is the part that you've now carved out. It's not the prayer. It's Trustee Wagner's riff on the situation and the slideshow, neither of which would be covered by the injunction you're requesting now. Well, those wouldn't, but our claim is against the prayers as well. He's thrown that part out with regard to injunctive relief, hasn't he? Well, he has. Well, it's not clear what he's thrown out. He seems to have thrown that out only on the assumption that he can reject injunctive relief outright. Well, I'm looking – no, I'm looking at the November order, the one that's been entered subsequently. It says, the last sentence of it, the court thus grants the defendant's request for summary judgment with respect to plaintiff's request for injunctive relief. That's right, Your Honor. And his explanation for why injunctive relief was off the table with respect to prayer was Marsh versus Chambers. It wasn't because the plaintiff's claim in prayers here failed. His view appears to be that if you overreach and ask for more than you're entitled to, you get nothing. And that's the abuse of discretion here. And we see, you know, this court said in the Winter case, in the decision that preceded the Supreme Court case, and in Sierra Forest, that there is an obligation at the preliminary injunction stage. So that's what drives the request, or narrow – your narrowed request is really in response to that concern, so that presumably your new request won't be subject to that objection on his part. That's right, to some extent. But it's also driven by him having ruled with respect to the underlying incidents that affect. So we would ask the court in remanding to instruct that, as the Supreme Court did in Winter, and as this court did in Sierra Forest, that even with respect to the permanent injunction – Well, why don't you – you know, one thing impressed me. I used to listen to the High Court in London, because I knew one of the judges. And they'd start out, and they'd say, well, what can we do for you today, see? So what is it you want us to do for you today? I would like – Just take it off slowly, so I can hear it, and it'll be on the record. What would you like us to do for you today? To vacate and remand, to instruct the court that it has to evaluate the four-factor preliminary injunction test and decide whether a preliminary injunction should be put into effect against the prayers until the court can reach a final ruling in the case. On what prayers? The prayers that the defendants are presenting at all of these different events that span the school year from the beginning to the end, with the exception of the board meeting prayers, which are not challenged because of Marsh v. Chambers. And you are not asking the judge – you're not asking us to instruct the judge to consider whether telling jokes about Jonah and the whale should be enjoined. You're not asking to consider whether God bless the USA should be enjoined. Only the prayers, using the word prayer in its dictionary sense, of a request for divine assistance or an acknowledgment and thanks for divine assistance. Yes, Your Honor. Thank you. Amen. Thank you, Your Honors. I see my time is up. Are there no questions? Good morning, Your Honor. John Burke from Jones Day on behalf of the appellees. I think Ms. Kahn's recitation – You're here from Jones Day? I am, Your Honor. I think Ms. Kahn's recitation of where we are – How come all of you guys dress the same? I think it's our dress code from Steve Brogan, Washington. Cuff links too, huh? Yeah. My three-year-old helped me put them on this morning because he was up. My one-month-old was up all night. But in any event, I think Ms. Kahn's recitation of where we are is a good starting point. I don't think that's exactly where we are completely. There's a couple other things that have happened. In their motion for preliminary – well, actually, I'm sorry. In their opening brief on appeal, they had mentioned on this public interest prong that the district court's entry of anonymity for the two Doe student plaintiffs informs on public interest. Well, that order has now been vacated. The Doe plaintiffs are no longer entitled to anonymity. Doe 1 is out of the case. He has dropped all of his claims of prejudice. Doe 2 has decided to proceed, and so she has now put her name out on the record. She is no longer a full-time student at Saddleback. She is with Ms. Mockett at UC Berkeley, and so she's a full-time student at Berkeley. So the only plaintiffs – the only plaintiffs in this case – they're actually on-campus plaintiffs – are the college professors. So that's one of the things that – well, the development since this appeal was briefed. The other thing is the status of some of the defendants. Don Wagner has been elected to the state assembly. His term on the board is over. And Roger Mather is no longer chancellor of the district. He's been replaced with Dixie Bullock, and she's been added as a nominal defendant in her individual – in her official capacity only since this appeal was briefed. And John Williams is resigning from the board. He's retiring. He's been on the board for five consecutive terms. And so he's done at the end of this month. So that's just to bring you up to full speed of where we are below. And Saddleback is a community college. It is, Your Honor. It is, just like Irvine Valley College. There's two public colleges within the South Orange County Community College District. It's Saddleback College and Irvine Valley College. I will get to that point because I think that's an important point in this case. They have not – Are there just two colleges within the community colleges? There's an off-campus – another small school, but the two main colleges are Saddleback and Irvine Valley College. I could first focus on the preliminary injunction. I think you're right that – I think Ms. Kahn's right that it was overbroad. It did speak to two aspects, religiously-themed programming and prayer. And she has argued that by eliminating a religiously-themed programming that prayer now is proper. I submit it's wrong. I don't think it is proper. If you read their reply brief on page 7, the plaintiffs argue, after trying to address the cases in our answering brief, that the only rule that can be discerned from these cases is that prayers are, and I italicize, sometimes permitted before an adult audience. So I think that an injunction, a preliminary injunction, directed at all prayers, I still think is overbroad. Can you give me an example of a prayer which is written and sponsored by a governmental entity? Yes. Is permitted before an adult audience other than Marsh v. Chambers? Those are elected officials, and some might say they're not very adult. Yes, Your Honor, I can give you many. The first, in the opinion that you cited with approval in your Rio Linda decision, you cited Judge Easterbrook's decision in Sherman, and Sherman lists – To Judge Monson. Easterbrook was on the panel, but it's Monson. I apologize. And the Sherman decision cites, among other things, George Washington's presidential proclamations, the presidential proclamations of Madison and Jefferson. The Sixth Circuit in Chattery cited prayers that are virtually identical to those at issue in this case. The Seventh Circuit in Tamper v. Brandt did the exact same thing. There is a long line, and I submit, unbroken precedent in the United States, from the Supreme Court through our circuit courts, addressing ceremonial invocations at our public ceremonies, which are not used to proselytize and not directed at children, which is the concern I submit in the Supreme Court school prayer cases that have been upheld as constitutional. I would also submit that in this case – You see that – I'm pretty well aware of the opinion in Newdow v. Rio Linda. You see that the prayers do not proselytize. I believe that the thrust of our opinion in Rio Linda was that the two words under God do not constitute a religious exercise, and therefore not a prayer, but a ceremonial reflection of historical values in this country. That's correct. I'm paraphrasing myself. What was that reflection? No, no, I can't hear you. That was in Newdow v. Rio Linda. But here you have some statements that begin, let us pray. That's correct. And then invoke the grace of the divinity and thank that grace for the achievements of the community. How can anyone say with a straight face that that's not a prayer? That is a prayer. I'm not arguing that it's not a prayer. Next is a question. Is it there to proselytize, which I suppose is a component of the coercion test, but not necessarily of the endorsement test? That's correct. Let's put that to one side. How can that prayer not be seen as an endorsement of religion by the state entity? Well, I think that the eyes that look to endorsement are objective ones, ones that would be familiar with the history of the United States, that speech exactly of this type is well-founded in the history of the country. Let's go back to just exactly that point. In Marsh v. Chambers, it was very clear that the invocations of religious content, to wit, prayers, had been given before legislative bodies since the inception of this country. The same people who voted for the First Amendment were given that type of invocation in the first Congress. And I think that was very much of a basis of Marsh v. Chambers. How can you say that these invocations are improper when you give them and write them, and at the same time write the First Amendment? Therefore, the First Amendment is not meant to scotch these in the first. But you know you're dealing with legislators, and you know there's no way to save them. It's not going to hurt anybody. But my next question is this. Where is the scholarly evidence in this case that, A, there were public schools composed of adults, people over 21 at the time, to which invocations were addressed at the same time as the invocations were first used in the legislatures as illustrated in Marsh v. Chambers? I don't see that. Sure. I would submit that the historical lineage is not as deep as legislative prayer at issue in Marsh. But it's not as deep. That is an understatement. It's inexistent in this record. This record? No, we cited, as we did at the district court, we cited to this court the Declaration of Corbett-Williams, which was really directed at the widespread nature of invocations at public colleges and universities in the United States presently. Tamper v. Brandt. 155 years in Indiana, no problem with that. Right. But 155 years goes back to 1840. It doesn't go back to 1789. That's correct. In our motion for summary judgment, we cited the district court to the University of North Carolina, which was, well, there is some debate over that. There's a couple other schools. North Carolina had an established religion, the Baptist religion, up until 1833. That's right. So that was sort of sui generis. That's before incorporation doctrine and all that. That's true. That's true. But there was invocations at graduations or prayers at graduations at North Carolina going back to its founding. The University of Virginia's cornerstone ceremony, and I don't recall the date. I think it was in the early 1800s. The point is that we're looking at almost two centuries old of practice. You would analogize the historical analysis of Marsh v. Chambers, of which we've already spoken, and say there is sufficient similarity in the historical record of invocations with prayer content in public schools to adult students. Not exactly. I would argue this. Marsh v. Chambers was decided before the Supreme Court decided McCreary County, which established the objective observer test. And also before the endorsement test was adopted. Absolutely. And so what we have struggled with is trying to figure out how Marsh fits in to this establishment clause jurisprudence that has evolved, and it's quickly evolving. The court appears to have said it's sort of the Bush v. Gore of establishment clause jurisprudence. We seem to have cordoned it off. Marsh v. Chambers? Yes. Marsh was cited in a real limbic opinion. Marsh was cited by Tamford and Chattery in their opinions. But Newdow didn't involve prayer. No. So we're back to the same. The problem is historically we don't have episodes that match because we didn't have public universities at the time. So it's hard to find the analogy. And I just can't find anything, at least from our circuit, that suggests that Marsh applies outside its immediate context. In fact, I see things that suggest that it doesn't. Sure. No. Tammock and Card were two cases. One was the Ten Commandments case, and the other one was the Good Friday case, both of which upheld this Constitution. But Marsh in that context didn't apply. I think another thing you've got to think about is that in those early days, people's First Amendment rights were not very well defined. And you had a different composition of the population of this country. And people, when it came to this subject, maybe some were uncomfortable with it. But they thought it was better for them to keep their mouths shut and not say anything because they didn't think it was going to get anywhere. It wasn't going to have any effect on others. And so they just, depending on the individual, just said, well, that's all right. Or they suffered through it or whatever. So, I mean, there's a lot of factors involved in all of this. And, you know, this under God thing, that didn't come in until the 1950s. That's correct. When I was in school, we used to pledge allegiance every day. But it was a pledge to the union, one nation, indivisible, not two nations. I agree. That's what it was about. I agree. So, anyway, I think we've got to think about things. And, you know, I know I didn't know Saddleback. Well, I suppose I should have known that Saddleback was a public institution. But I had a case way, way, way back involving a fellow that had just come back from Vietnam. He had been student body president at Saddleback. And he was not permitted to enroll because his blonde hair touched his collar. And he was represented by a very short-haired woman. And I thought of this because she passed away a couple weeks ago. Her last name was Jacob. She was a very good lawyer. And so I ruled that he had a privacy interest. But I got reversed by the circuit at the time. But, you know, people have different sensitivities. And I have no objections to religion or prayer. But, you know, we do have these constraints. I understand that, Your Honor. I remember one time I was at a breakfast in Billings, Montana. And we were going up to Miles City. And the lawyer who was taking us there, he was a great guy and he was a great friend of mine. When we had an invocation, he looked up at the heavens and said something like, Let us pray to the great Republican in the sky. There were only two Democrats in the room. So it made us feel a little uneasy. But getting back to my point on Marsh v. Chambers, I think if you evaluate Marsh through the prism of McCrary, what would an objective observer familiar with the history of the practice conclude? That's the test the Supreme Court says should be applied based upon external data, not internal information, not a judicial psychoanalysis of the speaker's state of mind. What does an objective observer view? Let me ask you this, Mr. Pope. Do you require for that use of Marsh v. Chambers through McCrary, where McCrary said you have to take a look at the context in which the act is used? It's used. I think that was central to Judge Breyer's concurring opinion. Do you require that there be a finding that the prayer, being 30 seconds to two minutes long, in a two-minute or two-hour or three-hour ceremony, be found to be de minimis as to its effect? I don't think—I mean, look, prayer, like the Ten Commandments, like the creche, like a creche display, like Good Friday as a state holiday. I mean, there are—we can't divorce religion from the United States. I mean, it's just—it's a fact of life. I mean, we live in a religious country, and there's going to be acts taken by the government that may— and to pick up your point, Judge Pregerson, is that may be viewed by some people as we develop as a society. It may strike them the wrong way. It may make them feel uncomfortable. Does it mean it's unconstitutional? No. And there may be some de minimis advancement of religion, but that's not what the objective test looks to under effect. Under effect, the objective observer who is familiar with the history of the practice being challenged or the symbol being challenged, how they would view that. And I submit that it is—the line of demarcation that you see from Marsh, from Judge Kavanaugh's concurrence in Newdow v. Roberts, which is the invocation of President Obama's inauguration, the Sixth Circus decision in Chattery, the Seventh Circus decision in Tamper v. Brandt, and even this court's decision in Rio Linda. You can call it a prayer. You can put any label you want on things. I mean, the Pledge of Allegiance mentions God. I mean, God is a religious subject. But the line, I think, when you're dealing with adults and the speech is not proselytizing, that has a historical lineage. It doesn't need to go back to the founding of the United States and have a long historical lineage. But it's undisputed that having invocations at public college university events, such as graduations, is—throughout the United States, it is a practice that is ongoing in almost every state in the country, and it does have a long historical lineage. And I think that an objective observer would be familiar with those facts. And as long as the speech is not looking to convert people, as you say, a one-minute speech within the context of a broad, larger, secular program is not going to appear to a reasonable observer, not to every observer, but to an objective, reasonable observer as establishing religion and offensive to the class. Otherwise, I mean, then you are running a slippery slope. I think the Supreme Court has cut the slippery slope off when you're dealing with kids. Lee v. Weisman, I think, is pretty clear. When you're dealing with little kids, you've got to— there is a concern with the subtle coercive effects that even speech such as this could have on little kids. Now, I can't quite get through my head why the prayer isn't an endorsement of religion and therefore fails under the endorsement test. Well, the endorsement is a component that melds both purpose and effect. And I think that, yes, the type of speech challenged here, prayer, or under God and the pledge, or a creche, or— No, no, there's a difference between under God and the prayer under our jurisprudence and prayer, specifically finding that under God is not a prayer. I understand that. Now, tell me again, why is a prayer, and this is obviously a prayer because it starts with let us pray. Got it. I agree. Why is a prayer not an endorsement of religion when sponsored, composed, and given by a state official?  I mean, whether something is an endorsement of religion in a constitutional sense depends on context. And I think the case law from the Supreme Court makes absolutely clear you cannot divorce speech or a symbol from context. And the context here is—you can put the label prayer on it, you can call it invocation, you can call it whatever you want, but would an objective observer viewing this speech in the context with which it's given as endorsing religion, as an establishment of religion? And I just don't think that the case law bears that out. I think the Sixth Circus decision in Chattery, I think the Seventh Circus decision in Tanford v. Brand set forth exactly why this type of speech is not an endorsement of religion. They don't really set forth. What they do is they assert that it isn't, and they make a finding that it isn't. But if you take a look at both those decisions, the prose is very sparse as to why it is not an endorsement. And I'm explaining why I think— They didn't explain it, but you're explaining it. Thank you, Judge Easterbrook. I'm doing my best. But if you look at—let's look beyond Mark. Let's look beyond Tanford v. Brand in Chattery. Let's look at Sherman. Sherman cites, which this court has cited with approval— For the purpose of the pledge. Okay. But the Sherman cites actual invocations. Unless we are to think that every president of the United States at their inaugurations violates the First Amendment when they give the exact type of speech— I mean, I would submit that the one delivered by Rick Warren at President Obama's inauguration was a lot different than the speech being challenged here. I mean, being thankful to God for, you know, bless our troops. Please keep—thanks for our students. Amen. Very brief. But you can't divorce a endorsement analysis of the speech at issue in this case from the overall context and history. And the context is a historical context, as it was at the time of Washington's inauguration, as it was at the time of the first Congress, and as it was at the University of North Carolina and the University of Virginia. It is. It is a historical context. I mean, as McCreary says, reasonable observers have reasonable memories. They will know—reasonable observers viewing this speech will have a reasonable memory to know that this is a type of speech—I don't know if expected is the correct word, but it is a type of speech that is part of the fabric of the United States and has been part of the fabric of our country for a very long time. I mean, two centuries. And so, unless we are to say that, you know, for two centuries we've just— our state officials and government officials have violated the Constitution with impunity, I think it means something. I think that history informs—it must inform. I mean, it has to inform on whether something is an endorsement of religion. And if we're—you can't put blinders on that in addressing whether something is unconstitutional. And that was my point. So, what are you saying? You're saying that the invocation at swearing-in ceremonies of public officials and inaugurations and all that— Or Memorial Day events. Yeah, Memorial Day events and all that. So, what does that tell us again? That would inform the eyes of the objective observer. The objective observer— What would the objective observer say? I think the objective observer would view the type of speech that plaintiffs are challenging in this case. Some of the invocations don't even mention God. I mean, trustee Lang's speech was just, you know, like to give blessings on our students and faculty and our troops. It doesn't even mention God. I mean, generic blessings that are like 30 seconds long and as part of a larger secular program. They would understand this type of speech is something they see. They see it on TV. They've seen it for years. And that's—those are the eyes that are looking. But that's not what you have here. Oh, I think it's exactly what we have here. I think the evidence in the record in this case is exactly what we have here. And let me give you an example. We have two colleges. We have two colleges in the system. We have Saddleback College and Irvine Valley College. There's one professor from Irvine Valley College, Louis Bauer. They have not challenged invocations at Irvine Valley College, even though it's been invocations given at Irvine Valley College for decades. Now, apparently Mr. Bauer is offended by invocations at Saddleback where he doesn't teach, but not offended by Irvine Valley College invocations. But they haven't been challenged. I proposed Mr. Bauer, and for strategic reasons, he said, they chose not to challenge invocations at IBC. And I asked what their strategic reasons were, and he was instructed not to answer. I submit I know what the strategic reasons were. It's Professor Westphal, who was the source, I submit, based upon the evidence, the source of a lot of the protests to the invocation practice, is a professor at Saddleback College. And you don't—and you have not seen—I mean, IBC is in Irvine. Saddleback is in Mission Viejo. You have the same invocation given on the same day at an IBC graduation and Saddleback graduation. There hasn't been— Isn't an ineluctable presumption in your argument, unspoken as to now, is that invocations, whether they are at the swearing-in of the president or whether they're in the ceremonies at graduation, are not the establishment of religion because nobody takes the religious content seriously. It's an acknowledgment of God. It's no more of an acknowledgment of God than our Declaration of Independence or our Pledge of Allegiance. Well, why don't you answer the question? In order not to have an objective, reasonable person take away from it a religious content, you have to just say, well, we've heard it so often that we don't pay attention to it. I think the answer to the question is exactly what the district court has found on summary judgment, is that an objective observer would view the speech as fulfilling its stated purposes, which are to bring about a dignity, a solemnity, a sense of gravitas to these occasions, not to advance religion. Well, that's what Stanford and Choudhury held. And that's what the district court in this case has held. If people don't pay attention to it, where do you get the gravitas? I don't know if people pay attention to it. Anyway, you have a lot of time. Do you know who started your law firm here in Los Angeles? You know, it's before my time. I was a summer associate at Jones Day in L.A., and then they asked me to move down to Irvine about nine years of my practice. Well, okay. I forget who started it. It was Bob Leffler. Oh, yeah, yeah, Leffler. That's right. He was my trustee in equity funding, and he's a wonderful man, and they should have his picture in the office. And his daughter now is a U.S. attorney in Anchorage, Alaska. If you ever get in trouble, just call her. Now, what belief do you think we should give? What I think should be done, Your Honor, and this is – there is no question that this is – and I'm going to answer your question, but I'm going to give you some context to it. Not only did the plaintiffs file a motion for summary judgment, they filed a motion for reconsideration where I think would submit five or six more fact-witness declarations and a stack of additional evidence saying, this now tips the scale. You should now file for us on a fact and endorsement entitlement. That's case law. It starts with – But the – and so what I would submit is that, look, you got an incomplete record. There's no question about that. We're going to be coming up in a matter of months. The hearing on our – we filed a motion for entry of judgment. That's going to be – the hearing is set for December 20th. Judge Cloutier usually doesn't have hearings. And the 27th is plaintiff's two motions. Our opposition briefs to those two motions are due today. And my reply brief is due today, so I'm going to be busy going back to the office. But the – what I would submit, let the district court resolve the factual issues. In other words, affirm it. I would – I mean – And amend this bill. I think that you're very – that's exactly what you should do. One, the injunction was overbroad. I mean, they conceded in their reply brief where they say that prayers are sometimes permitted before an adult audience. I don't know how you can seek a sweeping injunction against all prayer when you concede that prayers are sometimes permitted. But I think the district court went beyond that and said they're not likely to succeed on the merits. The district court followed existing law. I don't think it's incumbent upon a district court to try to predict how this court – from the Sixth and the Seventh Circuits in ruling on a preliminary injunction. I think the district court looked at the law and made a decision. And I think – We, of course, do that all the time. Absolutely. And I don't think it was incumbent upon the district court to try to predict whether there was ultimately going to be a circuit split between the Ninth Circuit and the Sixth and Seventh Circuits on this type of speech. Now, plaintiffs in their motion, although an oral argument counsel raised the four winter factors, in their motion at page 33. If we grant an affirmance, that will put us in a conflict. It will create a circuit split between the Sixth and – I mean, if we reverse, it will cause a circuit split between the Sixth and Seventh and us. It would, Your Honor. And I submit – Look, ultimately, you're going to get the whole case up and the whole record. You're going to get the Doe depositions. You're going to get all this evidence that's not in the record now. And if you're going to make that type of decision, I think it needs to be done in the context of a complete record. But plaintiffs, in their brief, say, are – I'll read it. It says – hold on. They say – Okay. Plaintiff's entitlement to a preliminary injunction turns solely on plaintiff's likelihood of success in the merits, not the other factors under where. And so I don't think we need a remand back for an academic consideration of these other factors. The district court found that the injunction was overbroad. It was not an abuse of discretion for the district court to manufacture an injunction out of whole cloth. And the district court went on and said that it didn't find that there was unconstitutional speech that would occur in the future, and that being thankful to God for his blessings didn't strike him as something that was a threat to religious liberty. And so I think that this court should affirm, even if it ultimately may decide, based upon a complete record, that it came to a different conclusion, this court's precedent says that doesn't concern it in deciding whether a preliminary injunction should issue. And so I would submit that at this stage of the case, the district court should be affirmed. Let the parties complete their litigation before the district court, and then we're going to be up here in a matter of months on a complete record, and we can try to resolve it, and not in a piecemeal fashion, we can resolve it in a procedure that makes the most sense. So that's where I'm at on that. Okay, I don't have anything more. Any more questions? Thank you very much. All right. Okay. I have a few minutes to cover things quickly. I want to start by saying that I do think it's very hard to say that prayers, when you have a policy that limits the message to prayers, isn't targeted at a religious purpose. And the court said that in Santa Fe, that the problem with the policy there was that the message was limited to invocation. And it's very difficult to say that in light of that limitation, that these other secular purposes that are being proffered in the litigation are actually driving the practice. I mean, we have prayers here that generally begin with Lord, Heavenly Father, Almighty and Eternal God, and they end in Amen. Not only that, but we also have an increasingly hostile presentation by the trustees, an increasing drawing of parallels between patriotism and religion. We have a prayer that's at 466 to 467 of the excerpts of records saying, You and whom America proclaims in God we trust. You, the one to whom America declares ourselves one nation under God. You, whom our leaders beseech when they say, God bless America. You have the defendants answering discovery when we ask them, what do the invocations do to promote patriotism, which is one of their asserted secular purposes. And they say, quote, for many people, God and country go together. And you have Trustee Wagner introducing the pledge at an event saying, I get to lead the pledge, and I will note for the record that this is on a day that the Ninth Circuit of all courts agreed that under God, in fact, belongs in the pledge. And you have constituents drawing the same parallel. You have one writing, our country was founded on biblical principles, and you have a trustee agreeing with statements like that. And you even have one saying, why should we be denied the right to public prayer in order to placate those heathens? And you have a trustee, Padraig, agreeing with that kind of statement. And it's that, the increasing hostility of the prayers, the increasing parallelisms drawn between religion and patriotism, that I think distinguish this case from Canford and Chaudhry. And I don't think to find the prayers in this case, in the context of the Establishment Clause, where context is determinative and factual detail drives the result, that you have any reason to create a circuit split. In Chaudhry, you have the defendants responding to the complaint by replacing the prayer with a moment of silence. You have purely generic entreaties. You have an adult audience, whereas in Saddleback, there's evidence in the record that there are 4% of the kids are under 18. And so when Mr. Vogt talks about how he knew versus Wiseman, I think his language was, little kids? They were high school graduates. They were at least 18 years old, presumably. And the age difference between the children, the people we're talking about here, isn't the black and white that Mr. Vogt is suggesting. It's actually much more of a kind of gray situation in terms of the makeup of the audience. You also have the evidence in Chaudhry and Tanford that these people were entirely free to come and go. The event, I believe, in one of them involved 35,000 people in a gargantuan stadium where the evidence showed. People invariably stayed seated. People invariably got up and left. And we've cataloged for you quite substantial evidence that at least with respect to some of these events, that's not at all what we have here. And we also had in those instances prayers given by outsiders, clerics who were invited from the community. And here it's the trustees themselves presenting the prayers. So I don't think it's at all foregone that you need to create a split to find for the plaintiff here. I also think that an affirmance is problematic because we've never had our day in court about whether we are likely to prevail or whether we raise serious questions going to the marriage, depending on which standards you're looking at. We've never had an assessment of that with respect to prayers. So what are you going to do now? Lunch?  There's a man with a head in the right place. That's one of my priorities. You wanted this one remaining issue to go back to the district court. And you can do that yourself if you want to. Well, Your Honor, without guidance from this court, that it was improper to deny our request for a preliminary injunction. Well, you've got a request for a preliminary injunction, which by your own acknowledgment now was overbroad. I have trouble understanding how we announced to the district courts that declining to enter an overbroad injunction is an abuse of discretion. Your Honor, I'm not saying it was overbroad. I'm saying we are no longer. Well, the district court said it was overbroad. And you have withdrawn your position in opposition to that. So I'm not sure what else we're supposed to take from it. I think you can read the summary judgment order and see that the district court appears to be under the impression that if we ask for more, he appears to think that even an injunction seeking prayers is overbroad. That's pretty clear from his November 4th order as well. Which is consistent with the defendant's position drawing a line from your reply brief. I'm not sure what else we're supposed to say to him. He's saying an injunction against prayers is overbroad in this case. Our position in our reply brief is simply that the courts have not said that prayer is always impermissible. You can't reconcile Marsh v. Chambers with that position. Our position is in this particular case, given these particular facts, given the history, given the context, that these prayers, the defendant's presentation of prayers, are impermissible. And the district judge appears to be under the impression that in this case, that kind of injunction is overbroad. And I submit that that's an error. That's an abuse of discretion to think that the judge, even if that's true, even if the judge thinks in this particular case, some prayers are permissible, I'm not sure how one gets there. And the judge has not shared a great deal of his thought process. But I think even if the judge is of the view somehow that some prayers are okay going forward and some prayers aren't, I think it's important for the judge to be alerted that there is some obligation in equity jurisprudence to go through the factors and see where that leads you. And that was true, certainly, as I mentioned earlier in that Winter case. I mean, that's what the court said has to happen in a preliminary injunction context. Well, it has to happen in order to enter a preliminary injunction. I'm not sure that Winter instructs that any motion has to be evaluated by those standards. A preliminary injunction is inherently discretionary on the level of... Our review of a preliminary injunction is inherently a review based on abuse of discretion because all of this is transitory. It's interlocutory. You don't have a complete record. So I hear what you're saying and, frankly, I probably sympathize a great deal when it comes to dealing with the case at the end. I'm just not sure how at this stage we take an injunction which is no longer being requested by the plaintiff and say anything other than that it wasn't abuse of discretion to enter it if plaintiff isn't even seeking it anymore. Well, in Sierra Forest, it was a preliminary injunction denied in an overbroad fashion. So you are right that with respect to Winter, it was the issuance of an overbroad preliminary injunction. But the obligation to tailor... And mind you, this isn't tailoring in the sense of some elaborate monitoring scheme. This is us asking for an injunction against A and an injunction against B. And you see that in the Gearson case, for example, you had a plaintiff saying, give me an injunction against planting a genetically modified alfalfa and give me an injunction against harvesting a previously planted genetically modified alfalfa. And the court gave the narrower injunction and this court affirmed. There's a Second Circuit decision, Fifth Avenue Presbyterian Church, which is largely the same. You have a church saying, stop the authority from dispersing homeless folks from nearby my church and also stop them from dispersing people in the perimeter of my church up to the sidewalk. And the court runs through the factors in a preliminary injunction context and says, where does this leave me? Shall I do the broader injunction? Shall I do the narrower injunction? And that's what district courts do. Otherwise, plaintiff has to... ...in declining to enter an overbroad injunction and declining to craft a narrower injunction for itself at the preliminary injunction stage. I believe that Sierra Forrest doesn't. Okay. I'll go back and take a look at that. Because that's really the part that troubles me. It seems to me that a preliminary injunction stage is only so much you're asking the district court to do. We're not talking about a final injunction here. And so asking the district court to take on at a preliminary stage the task of figuring out where exactly a line should be drawn is asking a lot. I agree with you. As I said, if it were an elaborate, complex kind of monitoring scheme or that sort of remedial situation. But surely, if plaintiffs are trying to get an injunction against Activity A and Activity B... ...it's largely upon the parts that you've now cut out. I mean, it's the statement by Defendant Wagner or the slideshow in the final slide that really scream out, this can't possibly survive under our case law. But those things aren't going to be covered by a preliminary injunction prescribing prayer. Well, the Wagner presentation would. He could have slightly reorganized it and escaped that. If he says, let us pray 30 seconds into his riff, then he might beat the injunction. Well, it was perfectly reasonable in the setting that we were in for us to seek the broader injunction. I mean, just what Wagner had said in his deposition, he'd do it again. Wagner had also said in his deposition that the God Bless the U.S. video was perfectly appropriate. So we had every reason to ask the court to issue a broader injunction at that time. Because otherwise, if the injunction were purely limited to prayer, it would be entirely subject to abuse by simple repetition of these things that the defendants claimed below weren't prayers. I mean, they said Wagner's presentation wasn't a prayer. And so at that time, we sought the broader injunction precisely to address those kinds of things that reasonably concerned us. It's not a concession. It's a change being driven by changes on the ground. Mr. Kahn, you say there is a duty on the court to draft a narrower injunction and give relief as to those constitutional violations which appear in the record, regardless of the broader ground which you've now abandoned. Don't you find some solace for that view in the case of Bernhardt v. Los Angeles County, which is one of our cases from 2003, which says exactly that, that the district court did err in not considering a narrower injunction limited to Bernhardt's pending case only? That's exactly what you're saying, isn't it? Yes, Your Honor. And I do think that that supports the result. I wanted to also say one more thing, which is Mr. Vogt did refer to a historical record about prayer. And there is some documentation in a book that's publicly available that the University of Virginia's first public graduation, which was in 1829, did not include prayer. So I think not only is there serious flaws and holes in their effort to try to put this case into the Marsh context, but even if one were inclined to somehow give some credence to the effort and see if they could sort of accomplish the evidentiary requirements there, I don't think they've done anything near that. And in fact, UVA did not. And as you, I'm sure, are familiar with the importance of UVA in the history of this country, I think it's very hard for that to be sustained. Unless the court has any further questions. Explain to me again, what problem do you have by raising this issue for injunctive relief on the secular purpose issue? We have sought some re-judgment, Your Honor, on that question. We are asking for a final ruling on our side, but we have no time frame for the district court to act on that. And if we were to turn around now and go revisit the preliminary injunction question that the district court has now twice indicated that it has no obligation to craft Yeah, but now you're giving them something narrow to focus on. But, Your Honor, if you look at the summary judgment order, the judge thinks that even the request for prayer alone is overbroad. So we're not sure what to do. I mean, that's the problem here, is that the judge appears to be thinking that both formulations are overbroad. I think the error in the preliminary injunction is that the court rejected even prayer because he thought B, religiously themed programming, was overbroad. But if you look at the summary judgment order, the judge thinks both are overbroad and has rejected both types of behavior in terms of an injunction. So I think it would be futile. You never know until you try, and you present one issue, one narrow issue, and you make your arguments, and you can get a ruling on that. And I thought that's what you wanted to do, but then you want a whole bunch of direction from us, which is not going to happen quickly, if it happens at all. You know, you've got a better finger on the pulse of what's going on, I suppose, Your Honor. Well, but we do have a 28-day requirement, meaning we can't, even if we were to move tomorrow, we're not going to get a ruling before 28 days expire. You could ask for an order shortly, and I want to hear it all together. Well, I think we have every reason to believe it would be a futile request, but I respect your view that one can always try. I don't know this judge well. He's another generation, and he's been around for a while. I thought that's what you wanted, but anyway, that's okay. Don't be like a judge. I don't want to be like the judge that we had on the district court that would tell you how to try the case, and then you lose it. All right. Thank you, Your Honors. Bye-bye. All cases heard today are submitted.
judges: Pregerson, Clifton, Bea